## Hancock v. Yancey, et al.

(Decided April 24, 1923.)

### Appeal from Christian Circuit Court.

1. Appeal and Error—Chancellor's finding not Reversed Unless Against Weight of Evidence.—The Court of Appeals is not authorized to reverse a judgment based upon the finding of fact by the chancellor unless such finding be against the weight of evidence.

2. Boundaries—Evidence Held to Sustain Finding New Fence Built Along Line of Old One Admittedly on Line.—In a suit to restrain trespass on plaintiff's land, evidence held to sustain the chancellor's finding that the wire fence constructed by defendants was along the line occupied by the former rail fence which admittedly was on the division line.

FRANK RIVES for appellant.

WHITE & CLARKE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

Complaining that appellee Yancey and his vendees have wrongfully entered upon and taken possession of a part of his lands lying along the divisional line, appellant Hancock commenced this action in the Christian circuit court praying an injunction against Yancey and those claiming under him, restraining them, and each of them, from further trespassing on the lands of appellant,

from cutting trees, from plowing or cultivating the land, and from interfering with fences thereon, and further praying a mandatory order directing appellees, Yancey, et al., to rebuild a fence charged to have been torn down and destroyed by them, and to recover the sum of $350.00 in damages.

The defendants filed an answer and, in addition to traversing the material averments of the petition, pleaded that the plaintiff Hancock, now appellant, without right or color of right, unlawfully claimed a portion of the lands of appellee Yancey which were described in the answer and was about to and threatening to change the divisional fence between the lands of Hancock and Yancey; that the fence as situated at the time of the filing of the answer was on the true line, which line had been established as a matter of right for a period of at least fifty years. The reply made up the issues.

The strip of land in controversy lies along the divisional line of the lands owned by Hancock and Kimbrough. About the time of the institution of this action Kimbrough bought the Yancey lands. This divisional line is 67 poles long, running in an eastern and western direction and is straight. On the line there stood for many years a rail division fence. This fence, appellant Hancock testifies, he placed there in 1890, or thereabouts. It was not disturbed from 1890 until about 1912, if at all. At the latter date appellant Hancock claims that the eastern end of the fence was moved about 25 feet on to the lands of Hancock by appellee Yancey or some of his employes, for the purpose of making a roadway on firm ground from the Yancey lands into the highway and so to go from the highway to a sawmill located on the Yancey lands.

The strip of land in controversy at the road on the east end is 22 feet wide and runs west to a point at the end of the 67 pole line. It is estimated that this disputed territory includes a boundary of 28/100 acres, a little more than a quarter of an acre, and is of the value of $12.50, according to the evidence of appellant Hancock, and of a very much less value according to the contention of appellees, Yancey and Kimbrough. There were twenty-six witnesses in all introduced on both sides, of which number ten, testifying for the plaintiff Hancock sustained his contention that the old rail fence which stood on the line between the parties to this action was 22 feet south of the new wire fence erected by appellees

immediately before the commencement of this action, and which wire fence appellees contend is not only located upon the true line but upon the same ground on which the old rail fence stood.

This action involves only a question of fact. The plaintiff contends that the old rail fence recognized by both parties as the true line stood 22 feet south at the east end of the line in controversy from the point where the new wire fence now joins the road, and running a western direction from that point converges with the line now occupied by the wire fence at the western end of the farm, a distance of 67 poles from the beginning; that the wire fence was not built along the true line nor along the line of the old rail fence but in the field of appellant Hancock and at a place at which no fence had ever stood. Hancock himself testifies that the wire fence which appellees claim is the true line was erected only a very short time before the commencement of this action, inside Hancock's field, against Hancock's will and protest, and that the two fences were standing there for some days before the rail fence was destroyed by appellees, with room enough between them at the east end next to the road for a wagon to easily have passed between, and that the two converged towards the west; that the old rail fence had stood there so long that trees had grown up in the lock thereof large enough, or almost so for saw stocks; that such trees and bushes stood all along the old fence row, but that there were no trees or bushes of any size or consequence either on the lands of Hancock or along the line of Yancey outside of the fence row; that he saw the two fences standing there after appellees built the new wire fence, and that the said new wire fence was located entirely upon his land and took from him the quarter of an acre of land now in controversy. He further testified that some of the trees which stood in the old fence row are now standing on the ground in a straight line, indicating clearly where the old fence was, and that these trees are several feet from the new wire fence located by appellees.

In the record are three or four photographs of the grounds over which the line runs, which photographs clearly show a line of trees, running almost parallel with the wire fence, which picture of the line of trees tends strongly to support the evidence of appellant Hancock. In addition to this appellant Hancock was supported in his evidence by nine other witnesses.

A civil engineer named Nelson, who surveyed the line in question for appellant Hancock, testified that he went over the ground shortly after the erection of the new wire fence and viewed the whole situation. He was asked:

"Q. I will ask you to state whether or not the worm of the old fence was there, in good visible condition at that time? A. It was. Q. I will ask whether or not you traced it from one end to the other? A. I did. Q. When you went back and resurveyed it on May 30th, had the old worm been disturbed in any way? A. Yes, been plowed up completely, that day evidently, from the looks of the ground. Q. Did this plowing show to be freshly plowed? A. It did. Q. State whether or not you could well trace the old worm fence even if it had been plowed up? A. I could by the blackberry bushes and small pieces of rail that had been taken up. Q. was there any doubt of where the worm of the old fence was? A. None."

On the contrary sixteen witnesses testified for appellees, Kimbrough and Yancey, and their evidence strongly tends to prove that the wire fence is practically, if not exactly at the same place where the rail fence stood. Several of these witnesses are old men and have known the line fence between the parties to this action for a number of years before they testified. Some of them deposed that a rail fence had been at the same place where the wire fence now stands long before 1890, the time at which Hancock testified he built the said fence. They all say in substance that the wire fence is on the true line between the lands of appellant and appellee—on the same line on which the rail fence stood. Some of the witnesses say that the photographs introduced in evidence do not show the true situation; that the trees shown in the photograph did not stand in the fence row, but that they stood south of the old rail fence; that said trees were never in the fence row. Most of them state that the fence at the east and where it joined the road was not changed at the time the gate was put in for the roadway to the mill on Yancey's place about the year 1912; that the gate was located some few feet south of the old rail fence and remained so all these years; that appellant Hancock or some one for him, in December, 1919, between sundown and sun up changed a part of the old rail fence near the east end and rebuilt it on the lands of appellee so as to take in the gate on the lands of appellant. Several persons testified that they passed along on the

afternoon, some of them late in the evening, and that the fence was standing in the old place; that in the morning some of them passed early and others later in the forenoon, and observed that the fence had been changed and rebuilt south of the gate, making a crook in the fence. This happened only a short time before the suit was brought. After this change in the rail fence was made appellees built the new wire fence now in question.

With this evidence all before him the chancellor visited the premises and looked over the ground where the old rail fence had stood and saw the new wire fence, the trees claimed to have stood in the old fence row, and all the bushes mentioned in the evidence, and after doing so reached the conclusion that the new wire fence was located upon the true line and entered a judgment denying appellant Hancock the injunction prayed and dismissed his petition, and this appeal is prosecuted from that judgment.

Aside from the conviction, obtained through careful reading of the evidence, that the true divisional line between the lands of appellant and appellees is at the place fixed by the judgment of the lower court, we are not authorized to reverse the judgment based upon a finding of fact by the chancellor unless such finding be against the weight of the evidence.

Upon reading the evidence of appellant Hancock we were almost persuaded that the chancellor had reached an erroneous conclusion. The trees standing along near the new wire fence tended to incline us to the belief that the old fence had stood at that place, for it is a well known fact that trees generally thrive along fence rows, or at least they are not disturbed there, and this fact taken in connection with the photographs introduced in evidence, unexplained were calculated to lead the court to believe that the old rail fence was at a point south of where the new wire fence now stands. Having read the evidence of both sides carefully, we are thoroughly convinced that the chancellor did not err in finding from it that the new wire fence is upon the true line.

For this reason the judgment is affirmed.